**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| Jane Doe ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 25-cv-00769 (DLF) |
| ) | |
| KRISTI NOEM ) | |
| Secretary of Homeland Security ) | |
| U.S. Department of Homeland Security ) | |
| Washington, D.C. 20528 ) | |
| ) | |
| KIKA SCOTT ) | |
| Senior Official Performing the Duties of the ) | |
| Director, U.S. Citizenship and Immigration Services) | |
| 20 Massachusetts Ave. NW ) | |
| Washington, DC  20529 ) | |
| ) | |
| ANTONIO DONIS ) | |
| Director, U.S. Citizenship and Immigration Services) | |
| Arlington Asylum Office ) | |
| 1525 Wilson Blvd., Ste. 300 ) | |
| Arlington, VA  20598-2500 ) | |
| ) | |
| KASH PATEL ) | |
| Director, Federal Bureau of Investigation ) | |
| 935 Pennsylvania Ave. NW ) | |
| Washington, DC  20535 ) | |
| ) | |
|      Defendants. ) | |
| _____ ) | |

**COMPLAINT FOR REVIEW UNDER THE ADMINISTRATIVE**
**PROCEDURE ACT AND FOR WRIT OF MANDAMUS**

Plaintiff Jane Doe ("Ms. Doe") is an asylum applicant who has been waiting over five

years for U.S. Citizenship and Immigration Services ("USCIS") to adjudicate her application.

She brings this lawsuit to redeem her statutory right to apply for asylum – though she long ago

submitted her application and appeared at an appointment to have her biometric information

captured, her right to apply for asylum is meaningless as long as USCIS holds her application in limbo indefinitely. Adjudication of Ms. Doe's asylum application is a nondiscretionary ministerial duty Defendants owe to Ms. Doe. Ms. Doe has no other adequate remedy to obtain that right except through this Complaint. Ms. Doe asks the Court to compel USCIS to adjudicate her asylum application promptly.

## JURISDICTION

1. This Court has jurisdiction to hear this case under 28 U.S.C. § 1361, The Mandamus Act, and 28 U.S.C. § 1331, Federal Question Jurisdiction. This matter arises under 5 U.S.C. §§ 701-706, the Administrative Procedure Act, and The Mandamus Act.

## VENUE

2. The U.S. District Court for the District of Columbia is a proper venue for this action under 28 U.S.C. § 1391(e)(1)(C) because (1) Defendants are agencies of the United States or officers or employees thereof acting in their official capacity; (2) no real property is involved in this action, and; (3) Defendants all maintain offices within this district.

## THE PARTIES

3. Defendant Kristi Noem is the Secretary of Homeland Security. She supervises components of the Department of Homeland Security ("DHS") responsible for adjudicating asylum applications.

4. Defendant Kika Scott is the Senior Official Performing the Duties of the Director of USCIS within DHS. She supervises components of USCIS responsible for adjudicating asylum applications.

2

5. Defendant Antonio Donis is the Director of the USCIS Arlington Asylum Office. In this capacity, he has responsibility for the adjudication of affirmative applications for asylum filed by noncitizen applicants such as Ms. Doe.

6. Defendant Kash Patel is the Director of the Federal Bureau of Investigation ("FBI"). In this capacity, he has responsibility for the completion of immigration security checks which are a ministerial component of asylum application processing.

7. All defendants are sued in their official capacities.

## FACTUAL ALLEGATIONS

### Legal Background: Jurisdiction Over Applications for Asylum

8. A non-citizen present in the United States has a right to apply for asylum. 8 U.S.C. § 1158(a)(1); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 376 (C.D. Cal. 1982).

9. Asylum may be granted if the non-citizen has a well-founded fear of persecution if returned to her home country. 8 U.S.C. § 1158(b)(1)(A).

10. The U.S. Congress has unambiguously expressed its intent that asylum applications be adjudicated within six months of filing. *See* 8 U.S.C. § 1158(d)(5)(A)(iii) (in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed).

11. Once an asylum application is filed, USCIS, together with the FBI, begin immigration security checks. The purpose of these checks is to quickly determine whether criminal or security-related issues exist in an applicant's background that impact her asylum eligibility.

12. To apply for asylum, a non-citizen files Form I-589, Application for Asylum and Withholding of Removal. 8 C.F.R. §§ 208.3, 1208.3.[1]

<u>Ms. Doe's Application for Asylum</u>

13. Ms. Doe is a native and citizen of Tanzania.

14. In Tanzania, Ms. Doe suffered government-sponsored threats and harassment because of her sexual orientation as a lesbian. She attended private meetings in the nation's capital intended to support and educate members of Tanzania's LGBT community. During one meeting of this group, which Ms. Doe did not attend, police raided the meeting and arrested and detained attendees, including people Ms. Doe knew. The event forced Ms. Doe and her partner to put their relationship on pause out of fear for their safety.

15. Ms. Doe filed Form I-589, Application for Asylum and Withholding of Removal, with USCIS December 10, 2019. On January 15, 2020, USCIS issued a receipt notice confirming that the application was pending. Exh. 1, Asylum Application Receipt Notice.

16. USCIS scheduled Ms. Doe to submit her biometrics (including fingerprints, photograph, and signature) as part of the necessary background checks for asylum. Ms. Doe submitted her biometrics on January 28, 2020. Exh. 2, Biometrics Notice.

17. Ms. Doe estimates that she has called the USCIS Contact Center approximately twenty times since her application was filed to inquire about the status of her case. Exh. 3, Declaration of Ms. Doe, dated Oct. 9, 2024. On two or three occasions, she was connected to a

---

[1] That form is also used to apply for two other forms of relief over which only the immigration court has jurisdiction: withholding of removal under 8 U.S.C. § 1231(b)(3) and protection under the Convention Against Torture (*see* 8 C.F.R. § 208.18). Ms. Doe intends to seek those forms of relief if and when she is placed into removal proceedings, but that is not material to her asylum application.

representative and simply told to wait. *Id.* On other occasions, she was unable to speak to anyone and received only a response from an automated system. *Id.*

18. On October 9, 2024, Ms. Doe's counsel sent an e-mail to the Arlington Asylum Office to inquire about the status of Ms. Doe's application. Exh. 4, E-mail Correspondence from Laura Jacobson, Counsel for Ms. Doe, to the Arlington Asylum Office, Oct. 9, 2024.

19. Counsel received an automated response the same day confirming receipt of the e-mail. Exh. 5, Automated Reply Email from Arlington Asylum Office to Laura Jacobson, Oct. 9, 2024. Counsel has received no further correspondence from USCIS.

20. On the same day, Ms. Doe, through counsel, made a case assistance request with DHS' Office of the Citizenship and Immigration Services Ombudsman (CIS Ombudsman), an independent agency of the U.S. government that serves as a liaison between USCIS and applicants who are experiencing delays or other adverse actions. Exh. 6, Email Correspondence from CIS Ombudsman to Laura Jacobson, Oct. 9, 2024, confirming receipt of case assistance request.

21. On February 5, 2025, the CIS Ombudsman responded that it had reviewed Ms. Doe's request for case assistance. Exh. 7, Email Correspondence from CIS Ombudsman to Laura Jacobson, Feb. 5, 2025. It confirmed that, according to its review, Ms. Doe's case falls under USCIS' third, and last, priority for scheduling asylum interviews. *Id.* The CIS Ombudsman acknowledged "the frustrations with lengthy processing times for asylum applications", but nevertheless stated it was closing Ms. Doe's request for assistance without taking any further action. *Id.*

22. USCIS' failure to adjudicate Ms. Doe's asylum application has forced her to put her life on hold. She is interested in joining the U.S. military and has spoken to recruiters, but they tell

her she cannot enlist because of her immigration status. Exh. 3. Ms. Doe's uncertain future in the United States has left her career at a standstill.

23. Ms. Doe also has close family members outside of the United States, including her mother, with serious health concerns. *Id.* Because of the U.S. government's inaction, Ms. Doe is helpless to go to her mother's aid, and she worries her mother's health will further deteriorate while she remains waiting.

### FIRST CAUSE OF ACTION: ADMINISTRATIVE PROCEDURE ACT

24. Ms. Doe seeks relief under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Specifically, she asks the Court to compel agency action unlawfully withheld and unreasonably delayed. 5 U.S.C. § 706(1).

25. Under the Immigration and Nationality Act, USCIS has a mandatory, non-discretionary duty to process Ms. Doe's asylum application. 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 1208.2(a)-(b); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 376 (C.D. Cal. 1982).

26. Under the APA, USCIS has a mandatory, non-discretionary duty to process Ms. Doe's asylum application "within a reasonable time". 5 U.S.C. § 555(b). Whether an agency delay is reasonable is a fact-specific question in which six factors are generally analyzed. *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"). The time agencies take to make decisions must be guided by a "rule of reason". *TRAC*, 750 F.2d at 80. When Congress has provided a timetable or other indication of the time in which an agency is expected to reach a decision, that statutory scheme may provide content for the rule of reason. *Id*.

27. USCIS' delay in processing Ms. Doe's application – over five years from filing – is no longer reasonable. The delay is far beyond the INA's instruction that asylum applications

should generally be adjudicated within 180 days of filing. *See* 8 U.S.C. § 1158(d)(5)(A)(iii). While the statute does not provide a cause of action for applicants whose cases are delayed longer than 180 days, it does provide context for the "rule of reason" by which this delay must be analyzed. Ms. Doe is not asking to be moved to the head of the queue. She is simply asking USCIS to promptly adjudicate her application now that a reasonable period of time for doing so has long since passed.

28. Ms. Doe asks the Court to compel USCIS to promptly adjudicate her asylum application.

## SECOND CAUSE OF ACTION: MANDAMUS

29. As an alternative to the first cause of action, Ms. Doe seeks relief in the form of a writ of mandamus.

30. All preceding paragraphs are incorporated in this section as if fully set forth herein.

31. Ms. Doe asserts a claim for mandamus relief under 28 U.S.C. § 1361 which provides the authority to compel an agency to perform a duty owed to her.

32. USCIS has a mandatory, non-discretionary duty to adjudicate Ms. Doe's asylum application.

33. Ms. Doe asks the Court to issue a writ of mandamus compelling USCIS to promptly adjudicate her asylum application.

<u>Prayer for Relief</u>

Therefore, Plaintiff Jane Doe prays for judgment against defendant USCIS and respectfully requests that the Court enters an order:

a) Compelling USCIS to promptly adjudicate Ms. Doe's asylum application;

b) Awarding Ms. Doe reasonable attorney's fees under the Equal Access to Justice Act; and

c) Granting such other relief at law and in equity as justice may require.

Date: April 1, 2025                          Respectfully submitted,

 /s/ Laura J. Jacobson
Laura J. Jacobson, Esq.
L&L Immigration Law, PLLC
2121 Eisenhower Ave., Ste. 200
Alexandria, VA  22314
Tel: (571) 429-3413
Fax: (703) 991-6021
laura@llimmigrationlaw.com

Index of Exhibits

| Number | Description |
|--------|-------------|
| 1 | Asylum Application Receipt Notice |
| 2 | Biometrics Notice |
| 3 | Declaration of Ms. Doe, Oct. 9, 2024 |
| 4 | E-mail Correspondence from Laura Jacobson, Counsel for Ms. Doe, to the Arlington Asylum Office, Oct. 9, 2024 |
| 5 | Automated Reply Email from Arlington Asylum Office to Ms. Doe's Counsel, Oct. 9, 2024 |
| 6 | Email Correspondence from CIS Ombudsman to Ms. Doe's Counsel, Oct. 9, 2024 |
| 7 | Email Correspondence from CIS Ombudsman to Ms. Doe's Counsel, Feb. 5, 2025 |

## <u>CERTIFICATE OF SERVICE</u>

       I, the undersigned, hereby certify that on this date, I uploaded the foregoing, along with all attachments thereto, to this Court's CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

       I furthermore will mail a copy by certified U.S. mail to the following individuals:

       U.S. Department of Homeland Security
       Office of the General Counsel
       Washington, DC 20528

       Kika Scott, Senior Official Performing the Duties of the Director
       U.S. Citizenship and Immigration Services
       20 Massachusetts Ave. NW
       Washington, DC  20529

       Antonio Donis, Director
       U.S. Citizenship and Immigration Services Arlington Asylum Office
       1525 Wilson Blvd., Ste. 300
       Arlington, VA  20598-2500

       Kash Patel, Director
       Federal Bureau of Investigation
       935 Pennsylvania Ave. NW
       Washington, DC  20535

       Edward R. Martin, Jr., U.S. Attorney
       c/o Civil Process Clerk
       United States Attorney's Office for D.C.
       601 D St. NW
       Washington, DC  20530

Date: April 1, 2025            Respectfully submitted,

                      /s/ Laura J. Jacobson
                  Laura J. Jacobson, Esq.
                  L&L Immigration Law, PLLC
                  2121 Eisenhower Ave., Ste. 200
                  Alexandria, VA  22314
                  Tel: (571) 429-3413
                  Fax: (703) 991-6021
                  laura@llimmigrationlaw.com